UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VADIM SUFIIAROV,<br><br>                          Petitioner,<br><br>v.<br><br>WARDEN, Otay Mesa Detention Center, et al.<br><br>                          Respondents. | Case No.:  25cv3265-LL-DDL<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ECF No. 1] |

Before the Court is pro se Petitioner Vadim Sufiiarov's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Return in opposition to the Petition. ECF No. 5. For the reasons set forth below, the Court **GRANTS** the Petition.

**I.     BACKGROUND**

Petitioner is a Russian national who has been detained at Otay Mesa Detention Center since he entered the country through an appointment on the CBP One app seeking asylum on January 1, 2025. Pet. at 6, 9. He was placed into removal proceedings under 8 U.S.C. § 1229a ("240 proceedings") when he was issued a Notice to Appear. ECF No. 1-1 at 2.

///

1

On May 22, 2025, the Department of Homeland Security's moved to dismiss proceedings without prejudice, indicating that Petitioner was eligible instead for expedited removal. *Id.* The immigration judge granted the motion, which Petitioner appealed without success. *Id.* at 2–3. Shortly after his appeal was dismissed, DHS placed Petitioner in expedited removal proceedings under 8 U.S.C. § 1225(b)(1)(A). ECF No. 5 at 2.

After Petitioner was interviewed and found to have a credible fear of persecution, he was issued a new Notice to Appear on October 21, 2025, charging him as an arriving alien inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (without valid entry documents). *Id.* at 2–3. Petitioner filed an asylum application, which is currently pending, and a merit hearing is scheduled for February 25, 2026. *Id.* at 3. Petitioner remains mandatorily detained under 8 U.S.C. § 1225(b)(1)(B)(ii). *Id.*

On November 21, 2025, Petitioner filed the instant Petition, alleging that his prolonged detention without a bond hearing violates the Fifth Amendment's Due Process Clause. Pet. at 6–7. He seeks a writ of habeas corpus directing Respondents to immediately release him from custody. *Id.* at 7, 9.

## II.   LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

/ / /

/ / /

/ / /

/ / /

## III. DISCUSSION

### A. Jurisdiction

Respondents argue that as a threshold matter, Petitioner's claims and requested relief are jurisdictionally barred under 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(a)(2)(A).[1] ECF No. 5 at 3–8.

#### 1. 8 U.S.C. § 1252(g)

Section 1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

Respondents argue that Petitioner's claims are barred because they arise "from the decision or action of the Attorney General to commence proceedings [and] adjudicate cases," which removes district court jurisdiction. ECF No. 5 at 4.

The Court finds § 1252(g) does not bar its jurisdiction over Petitioner's claims. The Supreme Court has explained that § 1252(g) does not bar jurisdiction for the "universe of deportation claims" but instead "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *2 (9th Cir. Aug. 27, 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). The Supreme Court later reiterated this narrow application of § 1252(g):

---

[1] Respondents also argue in a footnote that the Court should dismiss the Petition for lack of jurisdiction because Petitioner named the warden of his detention facility as a respondent instead of providing the warden's actual name. ECF No. 5 a 3 n.1. This is not a situation in which Petitioner has named the wrong public official, and so the Court finds that Petitioner has adequately identified the warden as a respondent.

1  "We did not interpret this language to sweep in any claim that can technically be said to
2  'arise from' the three listed actions of the Attorney General. Instead, we read the language
3  to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S.
4  281, 294 (2018) (citation omitted). Petitioner is not challenging the commencement of
5  removal proceedings but is instead claiming a lack of legal authority to subject him to
6  prolonged detention without a bond hearing during proceedings. *See Ibarra-Perez*, 2025
7  WL 2461663, at *2 (noting that a claim based on a lack of legal authority to execute a
8  removal order due to a violation of a court order, the Constitution, INA, or international
9  law, does not challenge the decision or action to execute a removal order). Therefore,
10 § 1252(g) does not limit the Court's jurisdiction in this matter.

   **2.   8 U.S.C. § 1252(a)(2)(A)**

12  Section 1252(a)(2)(A) provides that no court shall have jurisdiction to review a
13 "cause or claim arising from or relating to the implementation or operation of an order of
14 removal pursuant to section 1225(b)(1)" except as provided in § 1252(e).
15 8 U.S.C. § 1252(a)(2)(A). Section 1252(e)(2) allows judicial review of expedited removal
16 orders under § 1225(b)(1) in habeas corpus proceedings only to determine (1) "whether the
17 petitioner is an alien," (2) "whether the petitioner was ordered removed under such section,
18 and" (3) whether the petitioner can prove that he has been lawfully admitted as a permanent
19 resident, a refugee, or has been granted non-terminated asylum. 8 U.S.C. § 1252(e)(2).

20  Respondents argue that "to the extent that the Petitioner challenges the dismissal of
21 his original 240 proceedings and the issuance of an expedited removal order, that claim is
22 foreclosed" by Section 1252(a)(2)(A). ECF No. 5 at 5.

23  The Court finds § 1252(a)(2)(A) does not bar its jurisdiction over Petitioner's claims.
24 Petitioner is not challenging an expedited order of removal because he has not received a
25 final expedited removal order, nor is he challenging the discretionary decision to place him
26 in expedited removal. Instead, Petitioner contends that his prolonged detention without a
27 bond hearing is in violation of the Constitution. "Where a petitioner 'does not challenge
28 any final order of removal, but challenges his *detention* prior to the issuance of any such

order' the jurisdiction-stripping provisions do not apply." *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *8 (S.D. Cal. Oct. 1, 2025) (quoting *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008)). Therefore, § 1252(a)(2)(A) does not limit the Court's jurisdiction in this matter. *See Flores-Torres*, 548 F.3d at 710–11, 711 n.5; *Gimenez Gil v. Warden, Otay Mesa Detention Center*, No. 3:25-CV-03279-DMS-VET, 2025 WL 3675153, at *2 (S.D. Cal. Dec. 17, 2025); *Noori*, 2025 WL 2800149, at *7–8.

### B. Fifth Amendment Due Process Clause

Petitioner argues that his prolonged detention without a bond hearing violates the Fifth Amendment's Due Process Clause. Pet. at 6.

Respondents contend there is no due process violation because Petitioner is detained pursuant to § 1225(b)(1), which mandates detention through the conclusion of the removal process, and that is all the process he will receive. ECF No.5 at 8–10

The Due Process Clause of the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* The Ninth Circuit has questioned the constitutionality of certain immigration detention statutes, including § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L.Ed.2d 653 (2001) (internal quotation marks and citation omitted).

1  *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) (alteration in original).

2      The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process. *See Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *2 (S.D. Cal. Nov. 12, 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Maksin v. Warden, Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted,* No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019))); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116–17 (W.D. Wash. 2019).

    Respondents rely on two cases to support his argument that § 1225(b)(1) and its provision for mandatory detention provides all the process that Petitioner is due, but the Court is not persuaded. ECF No. 5 at 9–10 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953). In *Thuraissigiam*, the habeas petitioner argued that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 violated "his right to due

process by precluding judicial review of his allegedly flawed credible-fear proceeding." *Thuraissigiam*, 591 U.S. at 138. The Supreme Court found that the petitioner, as an applicant for admission, was provided "the right to a determination whether he had a significant possibility of establishing eligibility for asylum" pursuant to § 1225(b), and that he had "only those rights regarding admission that Congress has provided by statute." *Id.* at 140 (internal quotation marks and brackets omitted) (quoting §§ 1225(b)(1)(B)(ii), (v)). The Court finds *Thuraissigiam* addressed a noncitizen's right to challenge *admission*, not detention. *See, e.g.*, *Sadeqi*, 2025 WL 3154520, at *2 ("This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*."); *Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025) (finding *Thuraissigiam* inapplicable to cases challenging detention).

The Court finds *Mezei* is also distinguishable. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but stranded in his temporary haven on Ellis Island because other countries [would] not take him back." *Mezei*, 345 U.S. at 207. The Supreme Court recognized Mezei's exclusion for security reasons as different from noncitizens who may be released from detention on bond. *Id.* at 216 ("An exclusion proceeding grounded on danger to the national security, however, presents different considerations; neither the rationale nor the statutory authority for such release exists."). The facts are significantly different because Petitioner has not been excluded as a security risk, does not have a final order of removal, and has been granted asylum. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to issue of whether prolonged detention without a bond hearing violates due process).

/ / /

1     Respondents contend that applying the three-factor balancing test discussed in *Lopez v. Garland*, 631 F. Supp. 3d 870 (E.D. Cal. 2022) shows that Petitioner's detention is not unreasonably prolonged. ECF No. 5 at 10–11.

    Courts in the Ninth Circuit have used various factor tests to determine whether due process requires a bond hearing in immigration detention cases, including the *Lopez* test. *See e.g.*, *Loba L.M. v. Andrews*, No. 1:25-CV-00611 JLT SAB (HC), 2025 WL 3187577, at *1 n.1 (E.D. Cal. Nov. 14, 2025). In the *Lopez* test, the court considers "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879.

    Petitioner has been in immigration detention since January 1, 2025, which is approximately one year. Courts have found detentions of similar and shorter duration without a bond hearing weigh toward a finding that they are unreasonable. *See, e.g.*, *Sadeqi v. LaRose*, 2025 WL 3154520, at *4 (finding detention of over eleven months weighs toward a finding of unreasonableness); *Tonoyan v. Andrews*, No. 1:25-CV-00815-SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) (over eleven months); *Lopez*, 631 F. Supp. 3d at 879 (approximately one year); *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) (nearly nine months); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (over seven months). Therefore, the Court finds the length of detention weighs in favor of Petitioner.

    Next, the Court considers the likely duration of future detention. Petitioner contends that he does not know how long he will continue to be detained because his case has already suffered delays and he "could be stuck here for another year or more." Pet. at 9. Petitioner's asylum application is pending, and although there is a merits hearing on February 25, 2026, that is no indication that Petitioner's detention will end on that date. Although it is unclear when removal proceedings will conclude, it will likely be a substantial amount of time because it is unknown how long a decision on his asylum application will take, and either side may appeal an unfavorable ruling. *See Maksim v. Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *4 (E.D. Cal. Oct. 9, 2025) (finding determination of asylum

application and subsequent appeal could take a substantial amount of time). The Court finds this factor weighs in favor of Petitioner.

Finally, the Court considers whether delays in the removal proceedings were caused by Petitioner or the government. Five months after Petitioner was first detained and placed in removal proceedings pursuant to § 1229a with a final hearing set for September 10, 2025, the government moved to dismiss his 240 proceedings in order to place him in expedited removal. Pet. at 6; ECF No. 5 at 2. This resulted in Petitioner receiving a new Notice to Appear on October 21, 2025, which effectively restarted the removal process. ECF No. 5-2 at 22. Petitioner also caused some delay by appealing the dismissal of his 240 proceedings. The Court notes that the government did not move to dismiss the 240 proceedings until May 22, 2025, even though the reason for doing so occurred on January 24, 2025 when DHS issued an order designating certain classes of noncitizens like Petitioner for expedited removal. *See* ECF Nos. 5 at 2; 5-2 at 16. The Court finds the government could have moved to dismiss the 240 proceedings months earlier than it did. In considering actions on both sides, the Court finds this delay factor weighs slightly in favor of Petitioner.

With all three factors weighing in Petitioner's favor, the Court finds that Petitioner's continued detention under § 1225(b)(1) has become unreasonable and due process requires that Petitioner be provided with a bond hearing.[2] *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("[W]e note that the discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention."). At the bond hearing before a neutral immigration judge, the government "must justify his continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released."

---

[2] Although Petitioner requests immediate release from detention, he provides no authority to show he is entitled to such relief. The Court finds the appropriate remedy here is a bond hearing. *See Lopez*, 631 F. Supp. 3d at 882.

*Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024) (noting that due process requires "the government to prove dangerousness or risk of flight by clear and convincing evidence" at a bond hearing for noncitizens subject to prolonged detention (citing *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011))).

Accordingly, the Court **GRANTS** Petitioner's Petition.

## IV.   CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition under 28 U.S.C. § 2241 for an individualized bond hearing before an immigration judge. Within **fourteen days** of this Order, Respondents are directed to arrange an individualized bond hearing before a neutral immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released. If no hearing occurs within fourteen days of this Order, Petitioner shall be released from Respondents' custody.

**IT IS SO ORDERED**.

Dated: January 5, 2026

Honorable Linda Lopez
United States District Judge